IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

AUBURN MEDICAL CENTER,      )
INC.,                       )
                            )
     Plaintiff,             )
                            )     CIVIL ACTION NO.
     v.                     )     2:03cv1225-MHT
                            )        (WO)
SUE BELL COBB, in her       )
official capacity           )
as Chief Justice,           )
et al.,                     )
                            )
     Defendants.            )

OPINION

This case is a recent chapter in a longstanding
dispute between plaintiff Auburn Medical Center, Inc.,
(AMC) and defendant East Alabama Health Care Authority,
doing business as East Alabama Medical Center (EAMC),
over which entity should receive a certificate of need
(CON), which is defined under Alabama law as "A permit
... before which no person, except as exempted by
statute, shall ... construct ... a new institutional
health service or acquire major medical equipment." Rule

410-1-2-.19, Ala. Admin. Code.  In addition to EAMC, AMC

has named a host of additional defendants, most of whom

are state officials.  AMC brings claims under the First

and Fourteenth Amendments to the United States

Constitution (as enforced through 42 U.S.C. § 1983) and

under Alabama state law.  AMC has invoked the court's

jurisdiction pursuant to 28 U.S.C. § 1331 (federal

question) and 28 U.S.C. § 1367 (supplemental).

This cause is now before the court on the defendants'

motions to dismiss.  For the reasons that follow, the

motions will be granted.


I.  MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the

court accepts the plaintiff's allegations as true, Hishon

v. King & Spalding, 467 U.S. 69, 73 (1984), and construes

the complaint in the plaintiff's favor.  Duke v. Cleland,

5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not

whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims." <u>Scheur v. Rhodes</u>, 416 U.S. 232, 236 (1974).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. \_\_\_\_, 127 S.Ct. 1955, 1964 (2007), "only enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 1974.

## II.   FACTUAL BACKGROUND

An exhaustive recitation of the background and past procedural history of the longstanding dispute between AMC and EAMC leading up to the current lawsuit can be found in the Alabama appellate decision of <u>Auburn Medical Center v. East Alabama Health Care Authority</u>, 847 So. 2d 942 (Ala. Civ. App. 2001).  This court here gives only an overview as background.

3

## A.  First Federal Lawsuit

In the 1980s, AMC and EAMC filed competing applications for a CON with the Alabama State Health Planning and Development Agency (SHPDA).  AMC sought approval for the construction and operation a 64-bed hospital in Auburn, Alabama, while EAMC sought approval for a 54-bed extension to its existing facilities in Auburn.  SHPDA approved AMC's application for a CON, then later reversed its decision; SHPDA also denied EAMC's application.  AMC sued SHPDA in federal court for conspiring to deprive it of its CON.  The federal court found in favor of AMC and ordered SHPDA to award the CON to AMC.

In the 1990s, AMC informed SHPDA that it had a contract for the construction of the hospital in compliance with SHPDA Rules and Regulations.  SHPDA advised AMC that the construction contract met its requirements.  EAMC, through one of its partners, applied for a CON to construct and operate an ambulatory surgery

4

center in Auburn.   SHPDA denied EAMC's application because AMC already had a CON to construct and operate.

## B. State-Court Lawsuit

In 1997, EAMC filed suit in state court against SHPDA and AMC.   The suit sought, among other things, a declaration that AMC's CON was invalid because AMC had not begun construction within the time required by law. The state court held that AMC's CON was invalid.   AMC appealed, and the Alabama Court of Civil Appeals reversed and held that the AMC CON was valid.   <u>Auburn Med. Ctr. v. E. Alabama Health Care Auth.</u>, 847 So. 2d 942 (Ala. Civ. App. 2001).   EAMC then appealed, and the Alabama Supreme Court reversed and held that AMC's CON was invalid.   <u>Ex parte E. Alabama Health Care Auth.</u>, 847 So.2d 951 (Ala. 2002).

C.   Current Federal Lawsuit

AMC then filed the instant federal lawsuit in 2003. AMC named a number of state justices and judges as defendants: the Chief Justice and all Associate Justices of the Alabama Supreme Court; several Alabama appellate court judges; and the Alabama trial-court judge that ruled against AMC.   In addition to these judicial defendants, AMC named the following as defendants:  EAMC and its Chief Executive Officer; the Alabama Secretary of State; the Alabama State Health Officer; the Director of SHPDA; and the Progress Political Action Committee (Progress PAC) and its Chair.  All individual defendants, except the Chair of the Progress Political Action Committee and the Chief Executive Officer of EAMC, are sued in their official capacities only.

AMC charges that, over the course of the adjudication of its dispute with EAMC in the Alabama state courts, the defendants acted in concert to deprive AMC of its Fourteenth Amendment procedural and substantive-due-

6

process rights as well as its rights under the Alabama
Constitution.  AMC also charges that, in violation of its
First Amendment rights to free expression and
association, the defendants retaliated against if for
refraining or abstaining from making political campaign
contributions to the judges named as defendants.
Finally, AMC seeks a declaration that the judges named as
defendants failed to disclose campaign contributions in
violation of state law.

AMC has stated these various claims in terms of five
separate counts:  Count I: AMC charges that, in granting
summary judgment for EAMC and finding AMC's CON invalid,
the state trial-court judge deprived AMC of its right to
procedural due process under the Fourteenth Amendment and
the Constitution of Alabama because she failed to provide
AMC with adequate notice of her intention to rule on the
issue of the validity of AMC's CON.  Count II: AMC
charges that, in violation of its Fourteenth Amendment
right to procedural due process, the state justices and

judges who considered the challenge to AMC's CON were improperly influenced and biased, or had the appearance of being so, because they had received large campaign contributions from EAMC and its Chief Executive Officer and Progress PAC and its Chair.  AMC also charges that, by making campaign contributions, EAMC and its Chief Executive Officer and Progress PAC and its Chair acted in concert with these justices and judges to create the bias or the appearance of bias, in violation of AMC's right to procedural due process.  Count III: AMC charges that the justices and judges, in violation of AMC's right to substantive due process of law, entered judgments, decisions, and decrees that departed so far from the established law regarding decisions of administrative agencies as to amount to actions that were arbitrary, capricious, and unreasonable.  Count IV: AMC charges that, by receiving large campaign contributions from EAMC and its CEO, Progress PAC and its Chair, and others, the state justices and judges placed AMC in the position of

needing to make similar contributions in order to receive unbiased judicial consideration and thus the justices and judges violated AMC's First Amendment right to refrain or abstain from making political contributions without retaliation. <u>Count V</u>: AMC charges that the justices and judges, with the exception of one Associate Justice, violated state law by failing to disclose their campaign contributions.

Although phrased in different ways, AMC proposes the following remedies for the claimed violations of federal law: This federal court should enter a declaration that the defendants violated federal law and that AMC's CON is valid and has remained valid throughout all of the prior state-court and administrative proceedings; this court should set aside all state-court decisions finding against AMC and enjoin all defendants from interfering with AMC's exercise of its rights under its CON and, in particular, its rights to construct and operate a hospital; and, finally, this court should award

compensatory and punitive damages to AMC for the defendants' violation of its federal rights. Again although phrased in different ways, AMC proposes the following remedies for the claimed violations of state law: This court should enter a declaration that the defendants violated state law and should award the same relief requested for the violation of federal law, along with an injunction, based on the affirmative requirements of state law, directing all the sued state justices and judges, and their successors in office, to divulge to all litigants appearing before them, all political contributions to their respective election campaigns that may create an appearance of bias or impropriety as to the issues placed, or to be placed, before them.

## III.  DISCUSSION

### A.  Rooker-Feldman

The defendants contend that, under the Rooker-Feldman doctrine, this court lacks subject-matter jurisdiction

over AMC's lawsuit.   See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1926).   "The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)).   The United States Supreme Court has explained that district courts "are empowered to exercise original, not appellate, jurisdiction" and that it is the United States Supreme Court that has exclusive appellate jurisdiction 'to reverse or modify' a state-court judgment." Exxon Mobil Corp., 544 U.S. at 283; see also   28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari.").

11

In general, the Rooker-Feldman doctrine is applicable if (1) the federal action is brought by a state-court loser (2) complaining of an injury caused by a state-court judgment (3) rendered before the federal district court proceedings commenced and (4) inviting the district court to review and reject the state-court judgment. Exxon Mobil Corp., 544 U.S. at 284; see also Hoblock v. Albany Cty Bd. Of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (setting forth these four requirements for the application of Rooker-Feldman after Exxon Mobil).

These four requirements for the application of Rooker-Feldman are clearly met in this case as to all claims.  AMC, the losing party in the state-court judgment, brought this federal action.  The Alabama Supreme Court issued its final judgment in this case on June 14, 2002, approximately 18 months before AMC filed a complaint in this federal court.[1]  And AMC is unabashed

---

1. So as to give the benefit of the doubt to AMC, this court has looked to the date of the decision of the Alabama Supreme Court rather than the date of the (continued...)

12

in its request that this court review the state-court decisions, that this court find that the decisions violated federal law, that this court reject the state-court decisions and set them aside, and that this court reinstate AMC's CON; in short, AMC is asking that this court do what Rooker-Feldman plainly prohibits, that is, AMC is asking that this court "overturn an injurious state-court judgment." Exxon Mobil Corp., 544 U.S. at 292.

To be sure, while AMC was a party to the state-court proceeding, not all the defendants in the instant federal case were parties; indeed, the only defendant in the instant federal case who was also a named party to the state-court proceeding is EAMC. The question is therefore posed whether, in order for the Rooker-Feldman to be invoked, all parties in a later federal-court proceeding must have also been parties in the earlier

_____

1.   (...continued)
decision of the trial court. This court does not have to resolve which date is controlling.

13

court proceeding.  The Rooker-Feldman doctrine requires that the party against whom the doctrine is being asserted in federal court must also have been a party in the prior court proceeding.  Lance, 546 U.S. at 464 ("we have held Rooker-Feldman inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceedings").  In Rooker itself the United States Supreme Court applied the doctrine even though not all the parties in the federal-court proceeding had been parties to the earlier state-court proceeding.  Rooker, 263 U.S. at 414 (applying the doctrine even though the federal-court proceeding had two defendants who were not parties to the prior state-court proceeding).  The logic behind limiting the requirement to only the party against whom the doctrine is being asserted is obvious: A state-court loser should not be able to make an easy end-run around the Rooker-Feldman doctrine, and seek federal-court review of an earlier

14

court judgment, by merely suing additional, or even different, parties in federal court.

In any event, here EAMC was a party to the state-court proceeding and is a party to the federal-court proceeding. In addition, while SHPDA was a party to the earlier state-court proceeding and is not a named party in this federal proceeding, SHPDA's Director is a party in his official capacity to this federal proceeding, and, under federal law, that means that SHPDA itself is a party. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Finally, Feldman makes clear that the fact that AMC named as defendants the judicial officials who ruled against it does not bar the invocation of the Rooker-Feldman doctrine. In Feldman, the United States Supreme Court applied the doctrine where the losing party sued the judicial officials who had ruled against him. Feldman, 460 U.S. at 469 n.2, 473 n.8.

15

The court is aware that AMC did not rely on the First and Fourteenth Amendments in the state-court proceeding but now does so in this federal-court proceeding. However, this failure does not preclude the application of the <u>Rooker-Feldman</u> doctrine in this federal-court proceeding. In <u>Feldman</u>, the United States Supreme Court observed that a plaintiff's

> "failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court. This result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional claims."

<u>Feldman</u>, 460 U.S. at 483 n.16. And more to the point here, where AMC asserts in this federal proceeding that the state justices and judges that ruled against it in state court were biased, the United States Supreme Court in <u>Rooker</u> held that the fact that one of the claims asserted in the federal-court proceeding (and not

16

necessarily asserted in the state-court proceeding) was
that a state judge had a conflict and thus should have
been disqualified was not enough to confer jurisdiction
so as to allow the federal court to review the earlier
state-court decision.   Rooker, 263 U.S. at 417.[2]

_____

    2.  This court understands AMC's state-law claims to
include a claim, separate from a challenge to the denial
of its CON, that the sued state justices and judges, and
their successors in office, are required by state law to
divulge to all litigants appearing before them, all
political contributions to their respective election
campaigns that may create an appearance of bias or
impropriety as to the issues placed, or to be placed,
before them; however, while AMC ask that the court, as
part of it broad discretion to fashion relief for any
federal violation, require the justices and judges to
make a similar disclosure, this court does not understand
AMC's federal claims to include a claim, separate from a
challenge to the denial of its CON, that federal law
actually requires such disclosure.  But if AMC's federal
claims do include a disclosure claim, then AMC may have
a federal claim that is not precluded by the Rooker-
Feldman doctrine.

    Feldman was later summarized by the United States
Supreme Court in Exxon Mobil, as follows:

            "The two plaintiffs ..., Hickey and
            Feldman, neither of whom had graduated
            from an accredited law school,
            petitioned the District of Columbia
            Court of Appeals to waive a court Rule
                                    (continued...)

2.   (...continued)
that required D.C. bar applicants to
have graduated from a law school
approved by the American Bar
Association. After the D.C. court
denied their waiver requests, Hickey and
Feldman filed suits in the United States
District Court for the District of
Columbia. ... The District Court and the
Court of Appeals for the District of
Columbia Circuit disagreed on the
question whether the federal suit could
be maintained, and we granted
certiorari. ...

"Recalling Rooker, this Court's opinion
in Feldman observed first that the
District Court lacked authority to
review a final judicial determination of
the D.C. high court. ...

"In applying the accreditation Rule to
the Hickey and Feldman waiver petitions,
this Court determined, the D.C. court
had acted judicially. ... As to that
adjudication, Feldman held, this Court
alone among federal courts had review
authority. Hence, "to the extent that
Hickey and Feldman sought review in the
District Court of the District of
Columbia Court of Appeals' denial of
their petitions for waiver, the District
Court lacked subject-matter jurisdiction
over their complaints." ... But that
determination did not dispose of the
entire case, for in promulgating the bar
(continued...)

———————————————

    2.   (...continued)
         admission rule, this Court said, the
         D.C. court had acted legislatively, not
         judicially. ...   "Challenges to the
         constitutionality of state bar rules,"
         the    Court    elaborated,   "do    not
         necessarily require a United States
         district   court   to   review   a   final
         state-court   judgment   in   a   judicial
         proceeding."   ...   Thus,   the   Court
         reasoned, 28 U.S.C. § 1257 did not bar
         District Court proceedings addressed to
         the validity of the accreditation Rule
         itself. ...  The Rule could be contested
         in federal court, this Court held, so
         long as plaintiffs did not seek review
         of   the   Rule's   application   in   a
         particular case."

544 U.S. at 285-86 (quoting <u>Feldman</u>, 460 U.S. at 482,
486).

        Arguably, as in <u>Feldman</u>, a disclosure claim by AMC
could be viewed as a federal challenge to a non-judicial
decision (the state-court judges' financial disclosure
practices), which might arguably not require a review of
the state-court decision against AMC.  If the court has
misread AMC's federal claims not to include a disclosure
claim, then AMC may want to ask for reconsideration in a
timely manner.  However, with these comments, the court
emphasizes   that   it   is   not   saying   that,   upon
reconsideration the court would ultimately conclude,
after full examination, that AMC's disclosure claim
survives <u>Rooker-Feldman</u> or that the claim could survive
a Rule 12(b)(6) failure-to-state-a-claim challenge.

                           19

**B.   Pennhurst and Rule 12(b)(1)**

To the extent AMC claims that the defendants violated state law and asks that the defendants be compelled to comply with state law, its state-law claims are due to be dismissed for reasons in addition to the Rooker-Feldman doctrine.  First, the state-law claims, to the extent they are against state officials and entities, must be dismissed because federal courts lack jurisdiction to order state officials to comply with state law. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (there is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").  This federal court, therefore, cannot order the defendants who are state officials and entities to comply with state law.

Second, supplemental jurisdiction over the state-law claims is not appropriate because the federal claims are being dismissed for lack of subject-matter jurisdiction

under Fed.R.Civ.P. 12(b)(1).  As one federal appellate court has explained, a Rule 12(b)(1) "dismissal [of the federal claims] means that there never was a valid claim within the court's original jurisdiction to which the state claim may be supplemental."  <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001).  In accord with this explanation, the unanimous view of other federal courts of appeals that have addressed the issue is that supplemental jurisdiction over state-law claims is improper when all the federal claims have been dismissed for lack of subject-matter jurisdiction.  <u>Rifkin v. Bear Stearns & Co.</u>, 248 F.3d 628, 631-633 (7th Cir. 2001) (court could not exercise supplemental jurisdiction over state-law claims because it lacked subject-matter jurisdiction over the federal claims); <u>Saksenasingh v. Secretary of Educ.</u>, 126 F.3d 347, 351 (D.C. Cir. 1997) (if the district court "dismissed the underlying claim on jurisdictional ground, then it could not exercise supplemental jurisdiction.");

<u>Musson Theatrical, Inc. v. Fed. Express Corp.</u>, 89 F.3d 1244, 1255 (6th Cir. 1996) ("[a] 12(b)(1) dismissal postulates that there never was a valid federal claim."); <u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182, 1187 (2d Cir. 1996) (explaining that a district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.") (citation omitted). Therefore, this court lacks supplemental jurisdiction over AMC's state-law claims.

## C. Additional Reasons for Dismissal

Finally, so as to provide a complete disposition of this case, this court notes that there are other compelling reasons (not necessarily jurisdictional) to dismiss all or some of AMC's federal and state claims and requests for relief: First, AMC's request for compensatory and punitive damages from the defendants, other than those who are private parties, is obviously

barred by the Eleventh Amendment to the United States Constitution, for these defendants have been sued in their official capacities and thus any damages relief would have to come from the State of Alabama. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169-170 (1985); <u>Edelman v. Jordan</u>, 415 U.S. 651, 667-68 (1974).

Second, to the extent that, by charging some broad, over-arching undetailed conspiracy, AMC seeks to implicate the private defendants (the Progress Political Action Committee and its Chair and EAMC and its Chief Executive Officer) in the actions of the state officials named as defendants and thus attempts to state claims against the private defendants under federal and state law, AMC's conspiracy allegations fall far short of being able to withstand a failure-to-state-a-claim challenge under Fed.R.Civ.P. 12(b)(6), as interpreted in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. ___, 127 S.Ct. 1955, 1974 (2007) (to survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that

is plausible on its face"). The private defendants are due to be dismissed for this reason alone. Indeed, all defendants are due to be dismissed to the extent AMC alleges an utterly undetailed conspiracy.

Finally, even if <u>Rooker-Feldman</u> and the other legal principles discussed above did not bar AMC's claims, the law of preclusion would. Because using precise legal terminology is critical when discussing the preclusive effects of former adjudication, this court adopts the Supreme Court's definitional framework set out in <u>Migra v. Warren City School Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984): "The preclusive effects of former adjudication ... are referred to collectively ... as the doctrine of res judicata. Res judicata is often analyzed further to consist of two preclusion concepts: issue preclusion and claim preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral

estoppel.   Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.   Claim preclusion therefore encompasses the law of merger and bar." (Internal quotations omitted); see also Gjellum v. Birmingham, 829 F.2d 1056, 1059 (11th Cir. 1987) (adopting Migra definitions of res judicata, issue preclusion, and claim preclusion).   Because the prior judgment at issue was an Alabama-court judgment, this court must apply Alabama's law of preclusion.   See McDonald v. Hillsborough County School Bd., 821 F.2d 1563, 1565 (11th Cir. 1987); Kachler v. Taylor, 849 F. Supp. 1503, 1515-16 (M.D. Ala. 1994) (Thompson, J.).

Under Alabama law, the essential elements of res judicata are: "'(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.' Hughes v.

Allenstein, 514 So.2d 858 (Ala. 1987). ...  If all of these elements are met, any claim that was or could have been adjudicated in the previous action is precluded." N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990). Identity of parties concerns two sets of persons.  The first set comprises "those persons who were actual parties in the original action." Id.  The second set of persons to whom res judicata applies comprises "those persons who are or were in privity with the parties to the original suit."  Id.  Privity exists "where the nonparty's interests were represented adequately by the party in the original suit."  Id.  Privity also exists "where a party to the original suit is 'so closely aligned to a nonparty's interest as to be his virtual representative.'"  Id. at 1560-61 (quoting United Merchants & Mfrs. v. Sanders, 508 So.2d 689, 692 (Ala. 1987)).  These requirements for what is essentially the

type of res judicata called claim preclusion are met here.[3]

\*\*\*

For the many and varied reasons given above, this court cannot entertain AMC's federal and state-law claims.  An appropriate judgment will be entered.

DONE, this the 21st day of March, 2008.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

------------------------

3.  To invoke collateral estoppel or issue preclusion properly, a party must show three prerequisites: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.  In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." Nobles v. Rural Cmty. Ins. Servs., 303 F.Supp.2d 1292 (M.D. Ala. 2004) (Thompson, J.), aff'd, 116 Fed.Appx. 253 (11th Cir. 2004) (table).  These requirements would be met here as well if the issue in the earlier state-court proceeding and the issue in the current federal proceeding were viewed as one and the same: the validity of AMC's CON.